**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-02760-REB

TRAVIS RASHAD BARNES,

    Applicant,

v.

WARDEN JOHN DAVIS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

**BLACKBURN, Judge**.

This matter is before me on the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [# 1][1] filed October 24, 2011, by Applicant Travis Rashad Barnes. Respondents answered the Application [# 21], and Applicant filed a traverse [# 24]. After reviewing the pertinent portions of the record in this case including the Application, the Answer, the Traverse, and the state court record and applying the applicable law, I conclude that the Application should be denied.

### I. BACKGROUND

On January 9, 2004, Applicant was convicted by a jury in Denver County District Court Case No. 02CR2728 of two counts of first degree murder after deliberation. [# 1,

---

[1] "[# 1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

at 2]. He was sentenced to two consecutive prison terms of life without parole. [*Id.*].

The judgment of conviction was affirmed on direct appeal in *People v. Barnes*, No. 04CA0357 (Colo. App. June 7, 2007) (unpublished opinion). [# 10-7]. The Colorado Supreme Court denied certiorari review on February 4, 2008. [# 10-9].

On October 1, 2008, Applicant filed a post-conviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. The trial court denied the motion and the Colorado Court of Appeals affirmed in *People v. Barnes*, No. 09CA2438 (Colo. App. Apr. 21, 2011) (unpublished). [#10-12]. On July 25, 2011, the Colorado Supreme Court denied Applicant's petition for a writ of certiorari. [#10-14].

In the Application Applicant asserts three claims:

1. The trial court violated his Sixth Amendment confrontation rights by allowing the prosecution to present hearsay evidence without calling the out-of-court declarant as a witness.

2. Trial counsel was ineffective when counsel failed to object and renew his motion for a mistrial after the prosecution rested without calling the out-of-court declarant as a witness.

3. Direct appeal counsel was ineffective by failing to raise the Confrontation Clause claim properly on direct appeal.

Respondents have conceded that the Application is timely pursuant to the AEDPA one-year limitation period, 28 U.S.C. § 2244(d)(1). [# 17, at 3]. Respondents have further conceded that Applicant exhausted state remedies for his second and third claims. (*Id.*). However, I concluded in a previous order that Applicant's first claim for relief was procedurally defaulted in the state courts. [# 17, at 5].

A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is precluded from federal habeas

2

review, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or show that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 269-70 (1989)). "A habeas petitioner may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Banks v. Reynolds*, 54 F.3d 1508, 1514 (10th Cir. 1995); *see also Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Applicant asserts in his third claim that appellate counsel was ineffective in failing to raise the confrontation clause claim on direct appeal. Accordingly, I have determined that Applicant may be able to demonstrate cause for his procedural default of claim one based on his allegations in claim three. [# 17, at 6-7].

I address the merits of claim three below to determine whether ineffective assistance of appellate counsel excuses Applicant's procedural default of claim one. I also address the merits of claim two.

## II.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, I may not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an

>unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

>clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

>A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth

4

> in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407–08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Case 1:11-cv-02760-REB  Document 28  Filed 09/06/12  USDC Colorado  Page 7 of 17

### III. MERITS OF THE CLAIMS

#### *A. Statement of Relevant Facts*

The following facts are relevant to all of Applicant's claims.

At trial, Applicant's girlfriend testified on direct examination that on the night of the homicides, she borrowed a stick from a friend to put in her window "because there was no lock on the window to keep it from being opened."[2]  After the girlfriend explained that she was not afraid of anyone in particular, the prosecutor asked:

> Q. And do you remember telling [your friend], specifically, who you were afraid of breaking into your window?
> . . .
>
> A. No.
>
> Q. Would it refresh your memory to review [the friend's] statement?
>
> A. I did not hear the statement from [the friend], so I'm not sure what I would refresh my memory, if I never heard anything from her.  I'm sorry, I don't understand what she—[3]

Defense counsel objected, but the trial court over-ruled the objection and allowed the prosecutor to inquire whether the girlfriend's recollection would be refreshed by her friend's statement.[4]  The prosecutor then asked:

> Q. Specifically, . . . do you recall telling [the friend], . . ., that night, that you were afraid of your boyfriend coming in the window?
>
> A. No.
>
> Q. And that you needed a stick to close the window and lock it so he could not

---

[2]State Court R. 12/22/03 Trial Tr., at 110.

[3]*Id.* at 111-12.

[4]*Id.* at 112-115.

7

come in?[5]

Defense counsel objected again and moved for a mistrial, arguing that the prosecutor was trying to introduce hearsay without having the friend testify.[6] The prosecutor responded that the questions were necessary to lay the foundation for impeaching the girlfriend's testimony with the friend's testimony.[7] The trial court overruled the objection based on the prosecutor's representations.[8] The prosecutor then asked:

> Q. Ms. Taylor, I asked you a question about whether you said that to [the friend.]. Did you say that to [the friend]?
>
> A. No.[9]

The prosecutor rested without having called the friend as a witness.[10]

### B. Claims 1 and 3

Applicant asserts in claim one that the state trial court violated his Sixth Amendment confrontation rights by allowing the prosecution to present hearsay evidence without calling the out-of-court declarant as a witness. In claim three, Applicant maintains that appellate counsel was ineffective in failing to raise the confrontation claim on direct appeal.

---

[5] *Id.* at 115.

[6] *Id.* at 115-116.

[7] *Id.* at 116.

[8] *Id.*

[9] *Id.* at 116-17.

[10] *See generally* State Court R., 12/2203 and 12/23/03 Trial Trs.

As discussed in Section I above, Applicant procedurally defaulted his first claim in the state courts.  However, if he can establish cause for the procedural default based on ineffective assistance of appellate counsel (i.e., counsel's failure to raise the issue on direct appeal), and actual prejudice as a result of the violation of federal law, the Court will review his Confrontation Clause claim on the merits.  In this case, my inquiry to determine whether cause and prejudice exists for Applicant's procedure default of claim one is identical to the legal standard applicable to Applicant's ineffective assistance of appellate counsel claim asserted in claim three.  See Murray, 477 U.S. at 488-89 (counsel's ineffectiveness in failing properly to preserve a claim for state-court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim); see also Sherrill v. Hargett, 184 F.3d 1172, 1175–1176 (10th Cir.1999) (stating that if habeas petitioner "cannot show trial counsel was ineffective, then he cannot show 'cause' (ineffective appellate representation) for his procedural default").

Ineffective assistance of counsel claims are reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  See Smith v. Robbins, 528 U.S. 259, 285 (2000) (following Smith v. Murray, 477 U.S. 527, 535-36 (1986)). To prevail on a claim of ineffective assistance of counsel, Applicant "must show both: (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding . . . would have been different." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing Strickland, 466 U.S. at  687-88).  Under the AEDPA standard of

review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788.

When a habeas petitioner asserts that appellate counsel was ineffective in failing to raise an issue on appeal, the court looks to the merits of the omitted issue to determine if the issue was meritorious. *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). "[I]f the issue is meritless, its omission will not constitute deficient performance." *Cargle*, 317 F.3d at 1202. And even if the issue is meritorious but not obviously compelling, I "assess[ ] [ ] the issue relative to the rest of the appeal" and give "deferential consideration . . . to any professional judgment involved in its omission." *Id.*

It is difficult to demonstrate that appellate counsel was incompetent. *Smith v. Robbins* 528 U.S. 259, 287 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"). Furthermore, the Supreme Court has recognized that "appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The winnowing out of weaker arguments so that counsel may focus the court's attention on those more likely to prevail "is the hallmark of effective advocacy." *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir.1991).

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the appeal proceeding would have been different. *Strickland*, 466 U.S. at 693; *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000). The

likelihood of a different result must be substantial, not just conceivable. *Strickland*, 466 U.S. at 693. Mere speculation is not sufficient to satisfy this burden. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir.1995). In addition, I need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one. *Strickland*, 466 U.S. at 697.

Based on the above legal principles, I review the merits of the first claim for relief to determine whether counsel's failure to raise the issue on direct appeal constituted deficient performance.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that a trial court's admission of testimonial hearsay against a defendant at trial violates the defendant's confrontation rights unless the witness is unavailable and there was a prior opportunity for cross-examination. The *Crawford* Court declined, however,to provide a comprehensive definition of "testimonial" but indicated it includes, at a minimum, prior testimony at a preliminary hearing, before a grand jury, at a former trial, and statements made during police interrogations. *Id*.

In *Davis v. Washington*, 547 U.S. 813, 823-826 (2006),[11] the Court reaffirmed that the Confrontation Clause applies only to testimonial hearsay. In so holding, the *Davis* Court emphasized the Court's earlier statement in *Crawford*:

> The text of the Confrontation Clause reflects this focus [on testimonial

---

[11]*Davis* governs Applicant's case because it was decided while Applicant's direct appeal was pending. *See Griffith v. Kentucky,* 479 U.S. 314, 322-23 (1987).

> hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of *824 the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Davis*, 547 U.S. at 823-34 (quoting *Crawford*, 541 U.S. at 51).

The *Davis* Court further developed the scope of "testimonial," holding:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.

Consistent with *Crawford* and *Davis,* the Tenth Circuit has held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005) (citing *Crawford*); *see also United States v. Mendez*, 514 U.S. at 1035, 1043 (10th Cir. 2008) (citing *Davis* and *Summers*).

In Applicant's state post-conviction proceeding, the Colorado Court of Appeals concluded that the prosecutor's "reference to the girlfriend's statement did not violate the Confrontation Clause because it was not testimonial." [# 10-12, at 6]. This determination does not run afoul of controlling Supreme Court precedent. Although the Supreme Court has not fully defined the scope of "testimonial" hearsay, the Court in *Crawford* and *Davis* provide some parameters of what kinds of statements

12

are constitutionally-protected. The state appellate court's conclusion was consistent with these parameters. The statement that Applicant's girlfriend was afraid of him was made during a private, informal conversation between two friends and was not for the purpose of establishing any fact relating to the crime. The state appellate court's determination that the statement was not testimonial was a reasonable application of *Crawford* and *Davis*. *See*, *e.g., Delgadillo v. Woodford*, 527 F.3d 919, 926-27 (9th Cir. 2008) (witnesses' statements to her co-workers were non-testimonial); *Doan v. Carter,* 548 F.3d 449, 458 (6th Cir. 2008) (victim's statements to friends and neighbors about abuse and intimidation were not testimonial under *Crawford*); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004) (statements made in private conversation between private individuals were not made under circumstances in which an objective person would reasonably believe statements would be available for later use at trial)*.*

Accordingly, because the admission of the non-testimonial statement did not raise Confrontation Clause concerns, appellate counsel's failure to raise the issue on direct appeal did not constitute constitutionally deficient performance and, therefore, the ineffective assistance of appellate counsel claim fails on the merits. And, because the confrontation claim lacks merit, Applicant has not demonstrated a reasonable probability of a favorable result had appellate counsel raised the omitted issue. *See Smith*, 528 U.S. at 285. Applicant thus is not entitled to federal habeas relief for his third claim. In addition, Applicant's first claim for relief will be dismissed as procedurally defaulted because Applicant cannot show ineffective assistance of counsel as cause for his procedural default of that claim.

**B. Claim Two**

For his second claim, Applicant asserts that trial counsel was ineffective when counsel failed to object and renew his motion for a mistrial after the prosecution justified its inquiry about the hearsay statement as foundation for anticipated impeachment testimony, but then failed to call the out-of-court declarant as a witness to testify about the statement.  In the state post-conviction proceeding, Applicant argued to the Colorado Court of Appeals that counsel should have moved for a mistrial because the admission of the hearsay statement violated his confrontation rights. [#10-10, at 14-16 of 38].

The state appellate court rejected Applicant's ineffective assistance of counsel claim on the ground that the hearsay statement did not violate the Confrontation Clause because it was non-testimonial.  [#10-12, at 6 of 11].  I have already determined in the preceding section that this determination was not contrary to or an unreasonable application of federal law.

The Colorado Court of Appeals further rejected Applicant's claim based on the following reasoning:

> [E]ven if defense counsel could have moved for a mistrial based on the prosecutor having asked the [girlfriend] the question but not calling the friend, we discern no prejudice to [Applicant] because his girlfriend twice denied having made the statement. *See People v. Ned*, 923 P.2d 271, 275 (Colo. App. 1996) (effect of allegedly improper questions must be considered in the context of the testimony as a whole).  Nor do we discern sufficient prejudice inherent in the question to have required a mistrial. *People v. Collins*, 730 P.2d 293, 303 (Colo. 1986) (a mistrial should be granted "only . . . where the prejudice to the accused is too substantial to be remedied by other means."

[*Id.* at 6-7 of 11].

The state appellate court's determination that Applicant was not prejudiced by

14

counsel's failure to renew the motion for a mistrial at the close of the prosecution's case was consistent with *Strickland*. I have carefully reviewed the state court record and find that there is no reasonable probability that the colloquy between the girlfriend and the prosecutor affected the outcome of Applicant's trial. The state appellate court's factual finding that the witness denied ever stating she was afraid of the Applicant is presumed correct and is supported by the state court record. Furthermore, although there was no direct evidence of the Applicant's culpability for the murders, significant circumstantial evidence supported the jury's guilty verdicts, including the following: (1) both victims died of gunshot wounds to the head; (2) Applicant was the last person known to have been at the victims' home, where they were both found dead; (3) when the female residents left the victims' home to go to work, Applicant was the only person there; (4) when the female residents returned to the home after work, the victims were dead and Applicant was gone; (5) many of Applicant's belongings had been removed from the home; (6) Applicant had been armed in the home a few days before the shootings; and (7) Applicant was involved in a minor argument with one of the victims the day before the shootings.[12] In addition Applicant made spontaneous statements to the police the day after the shootings, when he voluntarily appeared at the police station for an interview, that "[t]he niggers need out of the f------ gangs and I just wanted to get them out,"[13] and "I'm just like you cops. I kill gang bangers."[14] I therefore find that to the

---

[12] *See generally* State Court R., 12/17/03 - 12/22/03 Trial Trs.; *see also* #10-4, at 6-9 of 30.

[13] State Court R. 12/19/03 Trial. Tr. at 168-69.

[14] *Id.*,12/22/03 Trial Tr., at 183-84.

15

extent the colloquy between the prosecutor and Applicant's girlfriend created an inference that she was afraid of the Applicant, the evidence was not significant and it is unlikely that it had any serious impact on the jury's verdict.  As such, the Colorado Court of Appeals' determination that Applicant was not prejudiced by the admission of the hearsay statement was a reasonable application of *Strickland* and Applicant cannot prevail on his second claim for relief.

Finally, I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  See *Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

## V. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket # 1] filed October 24, 2011, by Applicant Travis Rashad Barnes, is DENIED;

2. That this case is DISMISSED WITH PREJUDICE;

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

4.  Leave to proceed *in forma pauperis* on appeal is denied; however, Applicant may file a motion in the United States Court of Appeals for the Tenth Circuit.

Dated at Denver, Colorado, September 6, 2012.

**BY THE COURT:**

/s/ Bob Blackburn
Robert E. Blackburn
United States District Judge